FILED
CLERK, U.S. DISTRICT COURT

07/24/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____aab_____ DEPUTY

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office
ELI A. ALCARAZ (Cal. Bar No. 288594)
Assistant United States Attorney
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6938
     Facsimile: (951) 276-6202
     E-mail:   Eli.Alcaraz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. ED CR 20 **5:20-CR-00133-JGB** |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JESSIE JUAN LEON |
| v. | |
| JESSIE JUAN LEON, | |
| Defendant. | |

1.    This constitutes the plea agreement between JESSIE JUAN LEON ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

     a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Harboring an Illegal Alien for Private Financial Gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i).

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the mandatory special assessment within 30 days of the entry of defendant's guilty plea under this plea agreement by issuing payment in the form of certified check, business check, or money order (no personal checks) made payable to "Clerk, U.S. District Court," and identify the case name and number on the "memo" line.  All payments shall be delivered to:

United States District Court

Fiscal Department

255 East Temple Street, Room 1178

Los Angeles, CA 90012

h.   Consent to the United States Attorney's Office inspecting and copying all defendant's financial documents and information held by the U.S. Probation Office.

i.   Complete the attached Financial Disclosure Statement, and, within 30 days of the entry of defendant's guilty plea under this plea agreement, deliver a copy of the signed statement, along with all required supporting documentation, by email to: usacac.FinLit@usdoj.gov, or mail to:

United States Attorney's Office

Financial Litigation Section, Pre-Judgment Unit

300 N. Los Angeles St., Suite 7516

Los Angeles, CA 90012

j.   Agree that if the Court imposes an additional $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015 if the Court concludes that defendant is a non-indigent person, the $5,000 special assessment is due in full and payable immediately.  If the Court imposes the additional $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015, and further imposes a schedule of payment for that financial obligation, agree that such schedule represents a minimum payment obligation, applies only during the period of supervision (whether probation or supervised release), and does not preclude the United States Attorney's Office from pursuing all other means by which to satisfy all criminal debt obligations imposed by the Court, including referring the judgment debt to the Treasury Offset Program.

k.   Not oppose the imposition of a term of supervised release of three years.

3

1    l. Recommend a term of imprisonment of no less than 30

2 months.

3         THE USAO'S OBLIGATIONS

4   3. The USAO agrees to:

5    a. Not contest facts agreed to in this agreement.

6    b. Abide by all agreements regarding sentencing contained

7 in this agreement.

8    c. At the time of sentencing, provided that defendant

9 demonstrates an acceptance of responsibility for the offense up to

10 and including the time of sentencing, recommend a two-level reduction

11 in the applicable Sentencing Guidelines offense level, pursuant to

12 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

13 additional one-level reduction if available under that section.

14    d. Except for criminal tax violations (including

15 conspiracy to commit such violations chargeable under 18 U.S.C.

16 § 371), not further criminally prosecute defendant for violations of

17 Title 18, United States Code, Sections 1201 (kidnapping) and

18 1203 (hostage taking) arising out of defendant's conduct described in

19 the agreed-to factual basis set forth in paragraph 10 below.

20 Defendant understands that the USAO is free to criminally prosecute

21 defendant for any other unlawful past conduct or any unlawful conduct

22 that occurs after the date of this agreement.  Defendant agrees that

23 at the time of sentencing the Court may consider the uncharged

24 conduct in determining the applicable Sentencing Guidelines range,

25 the propriety and extent of any departure from that range, and the

26 sentence to be imposed after consideration of the Sentencing

27 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

28

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in the information, that is, Harboring an Illegal Alien for Private Financial Gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), (a)(1)(B)(i), the following must be true:  (1) G.S.H. was an alien; (2) G.S.H. was not lawfully in the United States; (3) defendant knew or had reckless disregard of the fact that G.S.H. was not lawfully in the United States; (4) defendant knowingly harbored, concealed, or shielded from detection G.S.H. for the purpose of avoiding his detection by immigration authorities; and (5) defendant knowingly harbored, concealed, or shielded from detection G.S.H. for the purpose of private financial gain.

<u>PENALTIES</u>

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), (a)(1)(B)(i), as charged in the information, is:  10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that, pursuant to the Justice for Victims of Trafficking Act of 2015, the Court shall impose an additional $5,000 special assessment if the Court concludes that defendant is a non-indigent person, to be paid after defendant's other financial obligations have been satisfied.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

<u>G.S.H. is a Mexican National</u>

Starting on or about February 6, 2020 and continuing to on or about February 12, 2020, defendant held and controlled G.S.H., an alien, and citizen and national of Mexico, who was not lawfully in the United States.  At all times relevant to this case, defendant knew that G.S.H. was not lawfully in the United States.

<u>Harboring, Concealing, and Shielding G.S.H.</u>

Between on or about February 6, 2020 and on or about February 12, 2020, defendant, with the assistance of other people, moved G.S.H. between various hotels, often staying at a hotel for a single

night.  For example, defendant checked into the Knights Inn, a motel located in Highland, California, with G.S.H. around 5:00 p.m. on or about February 11, 2020 and paid for a single night's stay. Defendant planned to switch hotels again the following day.  When defendant checked in, he asked for a single key for the motel room at the Knights Inn, although G.S.H was staying with him in the room.

Defendant drove a companion's car when moving between hotels. Once, G.S.H. was in the backseat and the companion was in the front passenger seat.  Defendant got into a car accident.  Defendant did not have a license to operate a motor vehicle.  After the car accident, defendant fled in the car with G.S.H. and the companion. In another instance when defendant was driving, he had instructed G.S.H. to duck down in the back seat, where a minor child that is approximately 4-5 years old was also seated.  Defendant also asked others to deliver food to the hotel in which he was staying with G.S.H. on any particular day.  Once, defendant instructed another person to come to the hotel room while defendant showered so that G.S.H. would not leave.  Among other reasons, defendant took these actions to harbor, conceal, and shield G.S.H. from detection for the purpose of avoiding G.S.H.'s detection by immigration authorities.

Demanding Money, Making Threats, and a Firearm

On or about February 1 or 2, 2020, G.S.H.'s family member, J.G.A., made arrangements for G.S.H. to be smuggled into the United States for a fee of approximately $8,000.  Between on or about February 7, 2020 and February 12, 2020, there were approximately 119 phone calls between defendant and J.G.A.  Over this span of days and these communications, defendant increased the monetary demand for G.S.H.'s release.  For example, on or about February 8, 2020,

defendant told J.G.A. over the phone to deliver approximately $100,000 to Pasadena, California, to secure G.S.H.'s release, but J.G.A. did not do so.  On another day, defendant told J.G.A. over the phone to bring approximately $25,000 to Rosemead, California, to secure G.S.H.'s release, but J.G.A. again did not do so.  Finally, on a third day, defendant told J.G.A. over the phone to bring approximately $10,500 to Pasadena, California to secure G.S.H.'s release, but again J.G.A did not pay.  Defendant planned to hold G.S.H. against his will until the money was paid.

While defendant was demanding payments from J.G.A., he was involuntarily detaining G.S.H. through coercion and threats, which were communicated to J.G.A. over the phone and communicated directly to G.S.H.  For example, once, defendant told J.G.A. to "Give us the money or we will kill him [G.S.H.]!"  On another day, when defendant sent J.G.A. the second Pasadena address, he told J.G.A., "Bring us the money or we will kill your family member!"

When G.S.H. was first transferred to defendant's custody, defendant possessed a black semi-automatic handgun on his person, in his waistband and visible to G.S.H.  At times when defendant and G.S.H. were alone in various hotel rooms, defendant would take the firearm out, and manipulate it, including by taking out the magazine and otherwise taking it apart and putting it together.  Numerous times during the time that defendant held G.S.H., defendant told G.S.H. that "bad things" would happen to G.S.H.'s family if G.S.H. attempted to escape, and "bad things" would happen to G.S.H. if defendant was not paid by G.S.H.'s family.  Further, on the first day that defendant held G.S.H., someone working with defendant told

G.S.H. that things were "going to get a lot worse" if J.G.A. did not pay.

SENTENCING FACTORS

11.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | [U.S.S.G. § 2L1.1(a)(3)] |
| Firearm Brandished: | +8 | [U.S.S.G. § 2L1.1(b)(5)(B)] |
| Detained Through Coercion/Threat and/or with Payment Demand: | +2 | [U.S.S.G. § 2L1.1(b)(8)(A)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  The USAO specifically reserves the right, without limitation, to seek an enhancement under U.S.S.G. § 2L1.1(b)(6) for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person

as well as an upward departure above the applicable Sentencing Guidelines range under U.S.S.G. § 5K2.4.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant, with the limitation as set forth in paragraph 2.1, and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court:   the conditions set forth in General Order 20-04 of this Court; the drug testing

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 60 months, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this

agreement and the filing commencing any such action; and

(ii) defendant waives and gives up all defenses based on the statute

of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this

agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

21.   This agreement is effective upon signature and execution of

all required certifications by defendant, defendant's counsel, and an

Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

22.   Defendant agrees that if defendant, at any time after the

signature of this agreement and execution of all required

certifications by defendant, defendant's counsel, and an Assistant

United States Attorney, knowingly violates or fails to perform any of

defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached.  All of defendant's obligations

are material, a single breach of this agreement is sufficient for the

USAO to declare a breach, and defendant shall not be deemed to have

cured a breach without the express agreement of the USAO in writing.

If the USAO declares this agreement breached, and the Court finds

such a breach to have occurred, then:  (a) if defendant has

previously entered a guilty plea pursuant to this agreement,

defendant will not be able to withdraw the guilty plea, and (b) the

USAO will be relieved of all its obligations under this agreement.

23.   Following the Court's finding of a knowing breach of this

agreement by defendant, should the USAO choose to pursue any charge

that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

24.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

1                 <u>NO ADDITIONAL AGREEMENTS</u>

2      27.  Defendant understands that, except as set forth herein,

3 there are no promises, understandings, or agreements between the USAO

4 and defendant or defendant's attorney, and that no additional

5 promise, understanding, or agreement may be entered into unless in a

6 writing signed by all parties or on the record in court.

7     <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

8      28.  The parties agree that this agreement will be considered

9 part of the record of defendant's guilty plea hearing as if the

10 entire agreement had been read into the record of the proceeding.

11 AGREED AND ACCEPTED

12 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
13 CALIFORNIA

14 NICOLA T. HANNA
United States Attorney

15

16 *Eli Alcaraz*                7/22/2020

17 ELI A. ALCARAZ                Date
Assistant United States Attorney

18 *Jessie Leon*              07-21-20

19 JESSIE JUAN LEON             Date
Defendant

20 *Joseph Walsh*            7 - 21 - 20

21 JOSEPH WALSH               Date
Attorney for Defendant JESSIE JUAN
LEON

22

23            <u>CERTIFICATION OF DEFENDANT</u>

24     I have read this agreement in its entirety.  I have had enough

25 time to review and consider this agreement, and I have carefully and

26 thoroughly discussed every part of it with my attorney.  I understand

27 the terms of this agreement, and I voluntarily agree to those terms.

28 I have discussed the evidence with my attorney, and my attorney has

1  advised me of my rights, of possible pretrial motions that might be

2  filed, of possible defenses that might be asserted either prior to or

3  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

4  of relevant Sentencing Guidelines provisions, and of the consequences

5  of entering into this agreement.  No promises, inducements, or

6  representations of any kind have been made to me other than those

7  contained in this agreement.  No one has threatened or forced me in

8  any way to enter into this agreement.  I am satisfied with the

9  representation of my attorney in this matter, and I am pleading

10  guilty because I am guilty of the charge and wish to take advantage

11  of the promises set forth in this agreement, and not for any other

12  reason.

13  _Jessie Jeon_                                    07-21-20

14  JESSIE JUAN LEON                                 Date
    Defendant

15

16                  CERTIFICATION OF DEFENDANT'S ATTORNEY

17      I am JESSIE JUAN LEON's attorney.  I have carefully and

18  thoroughly discussed every part of this agreement with my client.

19  Further, I have fully advised my client of his rights, of possible

20  pretrial motions that might be filed, of possible defenses that might

21  be asserted either prior to or at trial, of the sentencing factors

22  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

23  provisions, and of the consequences of entering into this agreement.

24  To my knowledge: no promises, inducements, or representations of any

25  kind have been made to my client other than those contained in this

26  agreement; no one has threatened or forced my client in any way to

27  enter into this agreement; my client's decision to enter into this

28  agreement is an informed and voluntary one; and the factual basis set

                                    18

forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          7. 21. 20
JOSEPH WALSH                              Date
Attorney for Defendant JESSIE JUAN
LEON

19

EXHIBIT A

1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,      ED CR No.

11                 Plaintiff,       I N F O R M A T I O N

12                 v.               [8 U.S.C. §§ 1324(a)(1)(A)(iii),
                                    (a)(1)(B)(i):  Harboring an
13   JESSIE JUAN LEON,              Illegal Alien for Private
                                    Financial Gain]
14                 Defendant.

15

16        The United States Attorney charges:

17           [8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i)]

18        Between on or about February 6, 2020 and on or about

19   February 12, 2020, in San Bernardino County, within the Central

20   District of California, and elsewhere, defendant JESSIE JUAN

21   LEON, knowing and in reckless disregard of the fact that an

22   alien, namely G.S.H., had come to, entered, and remained in the

23   United States in violation of the law, knowingly concealed,

24   ///

25   ///

26
27
28

harbored, and shielded from detection G.S.H. for the purpose of private financial gain.

NICOLA T. HANNA
United States Attorney


BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office

ELI A. ALCARAZ
Assistant United States Attorney
Riverside Branch Office

2